IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:16cr53 |
| | ) | |
| TIFFANY N. GORDON, | ) | |
| | ) | |
| Defendant. | ) | |

## POSITION OF THE DEFENDANT WITH RESPECT TO SENTENCING FACTORS

COMES NOW, the Defendant, Tiffany N. Gordon ("Ms. Gordon"), by counsel, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the *Sentencing Guidelines and Policy Statements*, and the Court's Sentencing Procedures Order, hereby files her sentencing pleading. Ms. Gordon respectfully states that she has reviewed the Probation Office's Pre-Sentence Investigation Report ("PSR"), does not have any objections to the PSR, and states her position with respect to sentencing factors.

### Introduction

Ms. Gordon's guideline range is 0 to 6 months incarceration. She does not have any prior criminal convictions. She has demonstrated acceptance of responsibility for her actions, and is remorseful concerning her conduct.

### Procedural Background

On April 8, 2016, Ms. Gordon made her initial appearance before the court and was released on bond.

On May 11, 2016, Ms. Gordon pled guilty, without a plea agreement, to Count One of the

Indictment, which charged her with theft of mail matter by a postal service employee in violation of 18 U.S.C. § 1709.

The PSR has been prepared and disclosed to the parties. The Sentencing Hearing is set for September 8, 2016.

## The Appropriate Sentence in this Case

The overriding principle and basic mandate of 18 U.S.C. § 3553(a) requires district courts to impose a sentence sufficient, but not greater than necessary, to comply with the four (4) purposes of sentencing set forth in subsection 3553(a)(2). The sufficient, but not greater than necessary requirement is not just another factor to be considered along with the others set forth in Section 3553(a). Instead, it sets an independent limit on the sentence.

Accordingly, Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing. The law must "tak[e] into account the real conduct and circumstances involved in sentencing, as well as the defendant's personal history and characteristics." *Gall v. United States*, 552 U.S. 38, 54 (2007) and 18 U.S.C. § 3553(a)(1). Since the Guidelines cannot do this, the Court must consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate and sometimes magnify, the crime and the punishment to ensue. *Id.* at 52. Ms. Gordon respectfully requests that this court impose probation as her sentence, which is based upon the reasons set forth herein.

## The Sentence Recommended by the Guidelines

The sentence recommended by the United States Sentencing Guidelines is 0 to 6 months. Consideration of the circumstances of Ms. Gordon's offense, her history and characteristics, and

the purposes of sentencing expressed by the § 3553(a) factors, demonstrate that a sentence to include a term of probation and no period of incarceration is, in this case, sufficient, but not greater than necessary to comply with the directives of § 3553(a).

**The Nature and Circumstances of the Offense as They Relate to the Sentencing Factors**

Ms. Gordon is deeply remorseful concerning her actions, and regrets that she abused the public trust that was bestowed upon her.  Although Ms. Gordon was struggling financially and finding it difficult to sustain herself, she recognizes that it does not excuse her behavior.  Ms. Gordon admitted her guilt in court at the time of the plea hearing and during her interview with the probation officer.  Ms. Gordon has not impeded or obstructed justice in any way.  *See* PSR ¶ 17.  Being prosecuted in federal court has had a profound impact on Ms. Gordon.  She is extremely remorseful and understands that her poor choice was harmful to herself and others.

The probation officer credited Ms. Gordon with a two-point reduction for acceptance of responsibility.  *See* PSR ¶ 28.

**The History and Characteristics of Ms. Gordon**

Tiffinay Nicole Gordon was born in Norfolk, Virginia to Bruce Gordon and Pamela Lynch. PSR ¶ 38.  Ms. Gordon's father is deceased, and she had very little contact with him for over 14 years before he passed away.  Ms. Gordon's father was reportedly in and out of jail and did not financially support Ms. Gordon when she was a child.  PSR ¶ 39.  Her parents divorced when she she was very young and was raised primarily by her mother.  Ms. Gordon has six (6) siblings, which include half-brothers and sisters that reside in Virginia and in Texas. PSR ¶ 38. Ms. Gordon has lived in Hampton Roads Virginia most of her life, with the exception of a ten-month period when she resided in Georgia. PSR ¶ 39.  Growing up, Ms. Gordon was a studious child who

3

enjoyed school and spending time with her family. PSR ¶ 39.

Ms. Gordon is single and has never been married. She does not have any children. Ms. Gordon lives with her mother and maternal half-sister in Norfolk, Virginia. She lives in a duplex styled home on the second floor and her maternal aunt and grandmother live on the first floor.

Ms. Gordon graduated on June 13, 2002 from Lake Taylor High School in Norfolk, Virginia. PSR ¶ 45. Ms. Gordon also attended two (2) semesters at Norfolk State University in Norfolk, Virginia sometime around the year 2002. PSR ¶ 46. Ms. Gordon also attended Tidewater Community College during the Spring semester in 2005. PSR ¶ 47.

At the time of the underlying offense, Ms. Gordon was employed by the United States Postal Service and earned $19.68 per hour. PSR ¶ 48. Ms. Gordon was previously employed with International Marketing Association ("IMA") in Virginia Beach from June 1, 2016 to July 1, 2016; however, she was discharged from employment based upon her bond status and this pending federal matter. PSR ¶ 50. Despite the basis for her discharge, IMA informed the probation officer that Ms. Gordon was "timely," "efficient" and a "good kid." PSR ¶ 50. IMA further indicated that there exists the possibility of rehiring Ms. Gordon after her pending federal matter has been resolved. PSR ¶ 50.

Upon Ms. Gordon's release, she plans to live with her mother in Norfolk. She also plans to further her education by obtaining a college degree in business management, and is committed to diligently work on making better choices that will ensure a more promising future.

### Other Relevant Facts and Factors

In determining the appropriate sentence to impose in this case, Ms. Gordon respectfully asks this Court to also consider the facts and factors below.

### The Need for the Sentence to Reflect the Seriousness of the Offense / Promote Respect for the Law / Provide Just Punishment / Afford Adequate Deterrence to Criminal Conduct

If the court placed Ms. Gordon on probation and imposed no term of incarceration, it would be a sufficient, but not greater than necessary, sentence to punish her for the offense she committed. Ms. Gordon broke the law and knows that a fair and reasonable punishment is appropriate. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just., 28 (2006). Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence. *Id.*; *see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. *Id.* at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id.* While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance. *Id.* at 2. The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentence is capable of enhancing deterrent effects. *Id.* at 1.

Research regarding white collar offenders in particular (presumably the most rational of potential offenders) found no difference in the deterrent effect of probation and that of imprisonment. *See* David Weisburd *et al.*, *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995); *see also* Gabbay, *supra*, at 448-49 ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."). Ms. Gordon respectfully submits that a sentence to include probation and payment of restitution would reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence to both Ms. Gordon and the public. Ms. Gordon is aware that the offense is serious. A sentence that would include any period of incarceration would amount to excessive punishment considering the facts and circumstances of this case. Ms. Gordon does not have any criminal convictions, she is well-educated, and is not a danger to the community. Therefore, such a sentence would accomplish all of the sentencing objectives.

## **Collateral Consequences of Conviction**

Individuals who have been convicted and incarcerated face numerous penalties beyond those imposed in the courtroom. As they pertain to Ms. Gordon, these collateral sanctions may include employment discrimination, loss of employment, occupational restrictions, exclusions from public housing, loss of welfare or food stamps, ineligibility for student loans, exposure to disease, disintegration of family ties, and financial loss. Ms. Gordon has already experienced losing her job with IMA as a result of the instant offense. In consideration of the 3553(a) factors, this Court should take collateral consequences into consideration, as they serve as additional

mitigating factors which support a sentence to include probation and no period of incarceration.

In *United States v. Matteo,* 299 F. Supp. 2d. 201, (S.D. N.Y. 2004), the court noted the following:

> "there is more to the concept of just punishment and deterrence of the particular individual than the temporal and physical hardships imposed by a sentence as measured by the length of time in prison pre-specified by a guidelines range. In fact, beyond the offender's actual deprivation of liberty when incarcerated, a host of other penalties and burdens always attend criminal conviction, to name a few: losses of family life, of socioeconomic status, of employment and career opportunities; diminution of certain civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement." *Id.* at 209-210.

While the notion of collateral consequences of conviction have served as grounds for downward departures, it is equally important when considering the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and to afford adequate deterrence to criminal conduct. Ms. Gordon has already experienced collateral consequences. She has had difficulty in trying to obtain and maintain employment as a direct result of the underlying offense. Additionally, a federal conviction for someone like Ms. Gordon, who does not have any criminal history, will undoubtedly have a tremendous impact on her for the rest of her life, which clearly reflects the seriousness of the offense and promotes respect for the law. The ramifications of a federal felony conviction provides for just punishment and adequate deterrence.

Ms. Gordon has accepted full responsibility for her actions. She understands the breadth of the impact this matter has had and will continue to have on her and her family. She has faced public embarrassment and humiliation for her actions. She is no longer able to afford living on her own, and due to the financial consequences of this matter, she had to move in with her mother.

7

These factors cumulatively and appropriately reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

## Protecting the Public from Ms. Gordon

This factor is geared to address repeat offenders - those that are more likely to commit future crimes. Ms. Gordon, simply put, is not a violent offender and is not a danger to the community. She has a high school diploma and has some college experience; and as such, is in a good position to better her life and to live a law-abiding life. Ms. Gordon has learned a great deal from this experience and will not jeopardize the well-being of herself and loved ones again. Ms. Gordon is apologetic for her actions. She has expressed remorse and immediately accepted responsibility for her conduct. A sentence to include probation and payment of restitution would be more than adequate to address any public safety concerns of the Court.

## To Provide Needed Educational / Vocational Training / Medical Care / Other Correctional Treatment

Ms. Gordon earned her high school diploma and has some taken classes at the collegiate level at Norfolk State University and Tidewater Community College. Ms. Gordon plans to further her college education and obtain a Bachelor's Degree. Throughout her life, except during the time that she moved to Georgia and until the prosecution of the instant matter, Ms. Gordon has maintained a stable career history. Over the years, Ms. Gordon has gained a variety of skills and other qualifications that will enable her to obtain gainful employment. Although Ms. Gordon was recently determined by The Counseling Center to have a mild Alcohol Use Disorder, any such treatment or counseling can be obtained without the need for incarceration, and could be made a condition of probation. Any period of confinement is unnecessary to achieve these goals.

### The Kinds of Sentences Available, the Sentencing Range Established for the Offense and the Pertinent Policy Issued by the Sentencing Commission

Ms. Gordon's advisory guideline range is 0 to 6 months. She is a Criminal History Category I. Nevertheless, the guideline range and the policy statements issued by the United States Sentencing Commission are but two factors for the Court to consider when fashioning the appropriate sentence. The Supreme Court has now decided that judges have latitude to sentence in disagreement with the policies of the United States Sentencing Commission. *See generally Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Rita v. United States*, 551 U.S. 338 (2007).

**(a) Ms. Gordon was a Law Abiding Citizen Who Exercised Extremely Poor Judgment**

Ms. Gordon lived most of her 32 year old life, crime-free. She has maintained a steady work history and furthered her education beyond her high school diploma. She does not have a criminal record as an adult or as a juvenile. Ms. Gordon is aware that she has pled guilty to a serious charge. She has, without delay, admitted her guilt and expressed remorse for her conduct. The Court's statutory directive is to consider not only the nature of the offense, but also the real-life circumstance. *See* 18 U.S.C. § 3553(a)(1). Title 18, United States Code, Section 3661 provides: . . . "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," cited in *United States v. Booker*, 543 U.S. 220, 249-50 (2005). In *Koon v. United States*, 518 U.S. 81, 113 (1996), the Supreme Court said: "[I]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate… the crime and punishment to ensue." *Id*. at

9

113. Moreover, Ms. Gordon's conduct can reasonably be considered an isolated mistake that is not aligned with her history. *See United States v. Howe,* 543 F.3d 128 (3rd Cir. 2008) (affirming probationary sentence and temporary home confinement where appellate court construed district court to have termed the offense an "isolated mistake" in the context of Howe's otherwise long and entirely upstanding life); *United States v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005) (six level downward departure upheld where district court concluded that defendant was "law abiding citizen, who [did] an incredibly dumb thing" and "was not the type of defendant the guidelines section was designed to punish").

Ms. Gordon can reasonably be characterized as "a good person" who exercised extremely poor judgment that has resulted in a federal conviction; and which, will undoubtedly impact her for the rest of her life. She is aware of her shortcomings. She knows that her conduct not only affected her life, but also, those who love and care for her, those who look up to her, and all those who were impacted by her actions. Ms. Gordon is committed to making a better life for herself and to do all that is necessary to achieve her academic and career goals.

**(b) Extraordinary Demonstration of Acceptance of Responsibility**

Under the advisory guidelines created by *Booker*, the court is not prohibited from fashioning sentences that rely on § 3553(a) to fit the circumstances of the case. Ms. Gordon, without delay, accepted responsibility for the commission of the offense. Additionally, on September 30, 2015, Ms. Gordon, in writing, acknowledged her wrongdoing and specifically provided an apology for her actions. Throughout the prosecution of this matter, Ms. Gordon has been forthright, honest, cooperative and remorseful about her actions. She was cooperative with the agents for the United States, and has continued to be cooperative throughout this process. Ms.

Gordon respectfully requests that this court give due consideration to these factors, and impose a sentence of probation.

### (c) Recidivism (Not a Future Danger)

Ms. Gordon poses little to no risk of recidivism. She has dealt with and continues to try to cope with the embarrassment, humiliation, and emotional trauma of being federally prosecuted and convicted for the underlying offense. She never wants to put herself in the position of being charged with any offense.

For all female offenders in Criminal History Category I, the recidivism rate is 10.0%. For those who have some college, the rate in CHC I is 13.9%; for those who have been employed, the rate is 12.7%; and for those who were married, the rate is 9.8%. For those with no history of illicit drug use, the recidivism rate is half that of those who do have a drug history. Undoubtedly, for those like Ms. Gordon, who are educated, have been employed, and are drug free, the combined rate is even lower. *See* U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* at Exh. 9, at 28; Exh. 10, at 29 (May 2004) [hereinafter *Measuring Recidivism*]. These studies demonstrate that certain aspects of the guidelines overstate the risk of recidivism. They also show that certain factors correlate with reduced recidivism, i.e., (1) recidivism rates decline relatively consistently as age increases, from 35.5% under age 21 to 9.5% over age 50, *Measuring Recidivism* at 12; (2) stable employment a year prior to arrest is associated with a lower risk of recidivism, *Id.*; (3) recidivism rates decrease with increasing educational level, *Id.;* (4) recidivism rates are lower for defendants who are married, or married but are divorced, than if never married, *Id.*; (5) recidivism rates are lower for those without illicit drug use in the year prior to the offense, *Id.* at 13; (6) non-violent offenders

are the least likely to recidivate, *Id.* These statistics demonstrate that Ms. Gordon poses little to no risk of recidivism.

Statistics demonstrate that Ms. Gordon poses little to no risk of recidivism. She has a strong family support system. She lives with her mother and sister. She lives in a duplex above the residence where her maternal aunt and grandmother live. Additionally, her family has expressed their love for her and their continued support. Ms. Gordon has set realistic academic and career oriented goals that she wants to achieve. She has something to look forward to, which means that she is not likely to commit other offenses. Ms. Gordon understands and appreciates the full consequences of her criminal behavior. That alone is incentive to refrain from any future criminal conduct.

### The Need to Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct

The Court must consider the need to avoid unwarranted disparities among defendants with similar criminal histories convicted of similar criminal conduct. 18 U.S.C. § 3553(a)(6). The court should avoid unwarranted similarities in sentencing among defendants who are different in ways not accounted for in the guideline range, *see Gall*, 552 U.S. at 55 ("need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated"). Ms. Gordon' case, history, characteristics, and similar case characteristics, warrant a sentence of probation, and such a sentence, would not result in any unwarranted sentence disparities.

Ms. Gordon has already been punished severely as she now stands a federally convicted felon--with all of the attendant circumstances that come with being a felon. Ms. Gordon has lost her right to vote, hold public office, sit on a jury, or possess a firearm. In regards to employment, the door will be shut for Ms. Gordon simply by virtue of being a felon, which has already occurred

when she was terminated by IMA earlier this year. Considering these factors, a sentence of probation for Ms. Gordon would not result in any unwarranted sentence disparities; and it would, serve the mandate of § 3553(a) to impose a sentence sufficient, but not greater than necessary to punish Ms. Gordon's conduct.

## Conclusion

Ms. Gordon has completely and timely accepted responsibility for her actions, and is extremely remorseful. Giving consideration to the facts and factors above, Ms. Gordon respectfully asks the Court to impose a sentence of probation and payment of restitution. Such a sentence is sufficient, but not greater than necessary to comply with the sentencing factors.

Respectfully submitted,

TIFFANY NICOLE GORDON

By: _____/s/_____
Wilfredo Bonilla, Jr., Esq. (VSB # 50922)
Assistant Federal Public Defender
Attorney for Tiffany N. Gordon
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: 757-457-0845
Facsimile: 757-457-0880
Email Address: wilfredo_bonilla@fd.org

## **CERTIFICATE OF SERVICE**

I certify that on this 29th day of August, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

>Mr. Randy Stoker, Esq.
>Assistant United States Attorney
>Office of the United States Attorney
>101 West Main Street, Suite 8000
>Norfolk, Virginia 23510
>Phone: (757) 441-6331
>Fax: (757) 441-3205
>Email: randy.stoker@usdoj.gov

And I hereby certify that I will mail the document by electronic mail to the following non-filing user:

>Ms. Leah D. Greathouse
>United States Probation Officer
>600 Granby Street, Suite 200
>Norfolk, Virginia 23510

>/s/
>Wilfredo Bonilla, Jr., Esq. (VSB # 50922)
>Assistant Federal Public Defender
>Attorney for Tiffany N. Gordon
>Office of the Federal Public Defender
>150 Boush Street, Suite 403
>Norfolk, Virginia 23510
>Telephone: 757-457-0845
>Facsimile: 757-457-0880
>Email Address: wilfredo_bonilla@fd.org